United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 11, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 03-20456

**ANTHONY GUY FUENTES,**

**Petitioner-Appellant,**

**versus**

**DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,**

**Respondent-Appellee.**

**Appeal from the United States District Court
for the Southern District of Texas
(01-CV-4018)**

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Anthony Guy Fuentes requests a certificate of appealability ("COA") from our court, so that he can challenge the denial of federal habeas relief for his Texas state court capital conviction and death sentence. Accordingly, for each claim covered by a COA request, we must determine whether that request makes the requisite "substantial showing of the denial of a constitutional right", 28

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

U.S.C. § 2253(c)(2), necessary to be permitted to appeal the denial

of that claim in his 28 U.S.C. § 2254 habeas petition. **DENIED**.

## I.

On direct appeal, and viewed in the light most favorable to the verdict, the Texas Court of Criminal Appeals described the facts as follows:

> [O]n Friday, February 18, 1994, [Fuentes], Kelvin Templeton, Terrell Lincoln, and Steve Vela conspired to rob the Handi Food Mart and any employees or customers who happened to be in the store. The Handi Mart was busy with employees of the Swartz Electric Company who had just been paid, cashed their paychecks at the store and were enjoying a few beers and the company of coworkers outside the premises of the store. Among those gathered was Robert Tate, a regular customer and acquaintance of the proprietors of the Handi Mart and sometime employee of Swartz Electric.
>
> [Fuentes] and his cohorts arrived at the store, noted that it was busy and proceeded with their plan. Templeton went directly to the coolers, grabbed two cases of beer and walked out. [Fuentes] and Vela walked into the store behind Templeton and pulled out their guns. Vela went to the cashier and demanded money. [Fuentes] approached the proprietor and a customer who were standing near the counter. The customer, Raymundo Soria, was a high school classmate of [Fuentes]. He followed [Fuentes'] orders, hiding his identity in fear that [Fuentes] would recognize him. James Draffin was walking into the store when he noticed that it was being robbed. He ran to inform his co-workers of the robbery. Ignoring his friends' warnings not to get involved, Tate gave chase when Templeton left the store with the beer. Tate caught up to Templeton and grabbed him. Templeton dropped the beer. Just then, [Fuentes] came running out of the store. Julio Flores testified that [Fuentes] came out of the store, ran up to Tate and Templeton,

and shot Tate twice in the chest. Testimony at trial indicated that [Fuentes] used a semi-automatic gun. Tate fell into a nearby ditch and died. The bullets recovered from Tate's body were consistent with those used in a 9 millimeter weapon, which are most commonly semiautomatic.

Flores further testified that, despite standing five hundred meters from [Fuentes], he got a good look at his face and positively identified [Fuentes] as Tate's murderer. Flores' description of [Fuentes] was consistent with the description given by the proprietor as the man who robbed him in the store. Flores and Soria positively identified [Fuentes] in photo lineups.

Templeton was the only co-conspirator to testify. He testified that he was not watching when he heard the shots fired; he thought Tate had shot at him, so he just began running. Templeton testified that although he did not see it, he was under the impression that [Fuentes] had shot Tate because when he looked back, [Fuentes] had a gun in his hand and was the one closest to him, and he had not seen Vela near the victim.

*Fuentes v. State*, 991 S.W.2d 267, 270-71 (Tex. Crim. App. 1999).

Fuentes was found guilty in Texas state court for the capital murder of Robert Tate. The jury then answered Texas' capital murder special issues in a manner that required the trial court to impose the death sentence.

The Court of Criminal Appeals affirmed the conviction and sentence. *Fuentes*, 991 S.W.2d 267. The Supreme Court of the United States denied certiorari. *Fuentes v. Texas*, 528 U.S. 1026 (1999).

4

Fuentes sought habeas relief in state court during the pendency of his appeal. In February 2000, the trial-level state habeas court rendered findings of fact and conclusions of law, recommending that relief be denied. The Court of Criminal Appeals adopted that recommendation and denied relief in September 2000.

After Fuentes filed a skeletal petition for habeas relief in the district court to comply with the applicable statute of limitations, he amended his petition. In March 2003, the district court denied relief and a COA.

## II.

Because Fuentes filed for federal habeas relief after the 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), his application is subject to AEDPA's constraints. Under AEDPA, we cannot consider Fuentes' appeal unless he first obtains a COA. 28 U.S.C. § 2253(c)(2); *e.g., **Miller-El v. Cockrell***, 537 U.S. 322, 327 (2003).

To obtain that COA, Fuentes must make "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2). Restated, he must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved [by the district court] in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". **Slack v. McDaniel**, 529 U.S. 473, 484 (2000) (quotation marks omitted). In other words, "[w]e ... look to the

5

district court's application of AEDPA to the petitioner's constitutional claims and determine whether the [district] court's resolution was debatable among reasonable jurists". *Miniel v. Cockrell*, 339 F.3d 331, 336 (5th Cir.), *petition for cert. filed*, 72 U.S.L.W. 3408 (17 Nov. 2003) (No. 03-811); *see also* **Miller-El**, 527 U.S. at 336. Therefore, at the COA stage, we do *not* apply the deferential AEDPA standard of review, found in 28 U.S.C. § 2254, concerning the merits of the habeas petition. *See*, *e.g., Miller-El*, 537 U.S. at 342 ("Before the issuance of a COA, the Court of Appeals had no jurisdiction to resolve the merits of petitioner's constitutional claims.").

Fuentes seeks a COA on the following claims: (1) during jury voir dire, the trial court made unconstitutional statements suggesting that gender could be used as a mitigating circumstance; (2) concerning his request for a jury instruction on the lesser included offense of felony murder, (a) the state habeas court improperly held the request was procedurally defaulted, and (b) the trial court erred in denying his request for the instruction; and (3) the Court of Criminal Appeals' refusal to review the sufficiency of his mitigation evidence denied him meaningful appellate review.

A.

Fuentes first seeks a COA based on the district court's holding as harmless error the trial judge's statements at jury voir

6

dire that gender could be used as a mitigating circumstance. The trial judge stated:

> [The punishment phase mitigation special issue] is a little confusing, at least by comparison with the rest of the things we've talked about ... I said I can't tell what a mitigating circumstance is, and that's true. Lots of times some folks think that in some cases youthfulness might be a mitigating circumstance; others might not. *Some folks might think in some cases that gender might be a mitigating circumstance.*

(Emphasis added.) Fuentes' counsel objected but the trial court overruled and gave more examples of factors that could be considered mitigating.

On direct review, Fuentes asserted that the trial court's statements violated his rights under the Fifth, Eighth, and Fourteenth Amendments by suggesting that a jury could consider gender a mitigating circumstance only if the defendant were female. Fuentes is male; he claims these statements encouraged the jury to discriminate against him. The Texas Court of Criminal Appeals held that the comments did not authorize the jury to consider gender as a mitigating circumstance, but instead supplied examples of mitigating circumstances that were not defined categories. *Fuentes*, 991 S.W.2d at 275. The Court of Criminal Appeals further noted that Fuentes provided no legal basis to support his contention that gender could not be considered a mitigating circumstance.

7

The state habeas court held this claim procedurally barred because it had been presented on direct appeal.

On federal habeas review, the district court held the use of gender in the punishment phase of a capital murder trial violates the Constitution. The district court denied habeas relief, however, holding: even if the trial court erred, Fuentes had not established "actual prejudice" from the comments; therefore, the error was harmless. *Brecht v. Abramson*, 507 U.S. 619 (1993).

Pursuant to *Brecht*, a court must determine "whether the error has substantial and injurious effect or influence in determining the jury's verdict". *Id.* at 637. A constitutional trial error does not mandate habeas relief unless it had a substantial effect or influence in determining the verdict. *E.g., O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Under this standard, the petitioner should prevail whenever the record is "so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error". *Id.* at 437. Restated, "if our minds are 'in virtual equipoise as to the harmlessness' under the *Brecht* standard, then we must conclude that it was harmful". *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir.) (quoting *O'Neal*, 513 U.S. at 435), *cert. denied*, 519 U.S. 854 (1996).

Fuentes asserts that the *Brecht* harmless error test is no longer viable in the light of AEDPA's "contrary to" or "unreasonable application of clearly established Federal law"

8

standard.  28 U.S.C. § 2254(d)(1).  Moreover, he contends:  *Brecht* should not apply because the state court did not perform its own harmless error analysis as required by *Chapman v. California*, 386 U.S. 18 (1967); and, accordingly, our court should review under the *Chapman* standard, which requires reversal unless the error is harmless beyond a reasonable doubt.

These contentions are foreclosed by *Robertson v. Cain*, 324 F.3d 297 (5th Cir. 2003).  Although the circuits have split on this issue, *Robertson* held that *Brecht* survived AEDPA and is applicable, even where the state court failed to perform the harmless error analysis.  *Id*. at 306-07.

The district court found:  at voir dire, the trial court merely provided examples of what a juror *may* feel is a mitigating circumstance, but did not define a category of mitigating evidence or authorize its use in the punishment phase; neither side contended at the punishment phase that the jury should consider gender in answering the special issues; the trial court instructed the jury that mitigating evidence "may include, but is not limited to, any aspect of the defendant's character, background, record, emotional ability, intelligence, or circumstances which you believe could make a death sentence inappropriate", but cautioned the jury to consider only those circumstances supported by the evidence; neither side presented evidence relating to gender; and the trial court properly informed the jury of the role of mitigating

9

evidence, noting that the jury should not be swayed by mere sentiment, sympathy, prejudice, or public feeling. Based on *Brecht*, the district court held: even if the trial court erred, there was no indication that the jury based its sentencing determination on Fuentes' gender, either as a mitigating or aggravating factor.

For COA purposes, and because the district court applied the correct standard, we review its application of *Brecht* only to determine if that application is debatable among reasonable jurists. Fuentes asserts: of the several potential jurors who heard the trial court's comments about gender, one was selected for the jury; and the comments implied it was permissible to consider Fuentes' masculinity against him on the mitigation issue. Even assuming the trial court's statements were error (but, along that line, and as quoted above, the court only said some "might" think gender "might be a mitigating circumstance"), the district court's ruling that the error did not affect Fuentes' substantial rights is *not* debatable among reasonable jurists. First, as noted, the comments were only examples of evidence that a jury "might" find to be mitigating. Second, it is unlikely that the single juror who heard the statements at the start of trial even remembered them at the sentencing phase. Moreover, the trial court did not specify that only females could have their gender considered as mitigating evidence. Neither side addressed gender at the punishment phase,

10

and the trial court warned the jury at that time not to be swayed by prejudice when considering the evidence. Lastly, there is nothing to suggest that the jury based its imposition of the death sentence on Fuentes' gender.

B.

Fuentes next requests a COA on whether the trial court erred in denying an instruction on the lesser-included offense of felony murder. The district court denied habeas relief on two bases: the claim was procedurally defaulted; in the alternative, reviewing the merits under the AEDPA deferential standard, the trial court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, *see* 28 U.S.C. § 2254(d)(1).

1.

Texas law requires that a proposed jury instruction be made either in writing or dictated to the court reporter. TEX. CRIM. PROC. CODE ANN. § 36.15 (Vernon 2003). During its deliberations, the jury sent a note to the court asking whether it could consider a lesser degree of murder. Upon the trial court's referring the jury to the instructions as given, Fuentes' trial counsel objected, contending he had previously requested a lesser included offense instruction on felony murder. The trial judge stated she had no memory of such a request; and trial counsel noted that, although they had such a discussion, it may have been off the record. Trial

11

counsel then requested a felony murder instruction, which the trial court refused to give.

At the state habeas proceeding, the trial-level court developed evidence on when and how the initial jury instruction request was made. Based on trial counsel's court-ordered affidavit submitted to that state habeas court, it found that counsel had made an off-the-record, oral request for the lesser included offense instruction, which was refused.

The Court of Criminal Appeals denied relief. It adopted the conclusion that the lesser included offense claim was procedurally barred because, contrary to Texas law, Fuentes' trial counsel had not made a request for the instruction either in writing or on the record.

On this point, the standard for federal habeas relief *vel non* is well established.

> A federal habeas court plainly cannot grant relief where the last state court to consider the claim raised by the petitioner expressly and unambiguously based its denial of relief on an independent and adequate state law procedural ground. **Coleman v. Thompson**, 501 U.S. 722, 729-30 (1991). A state procedural rule is adequate if it is "firmly established" and regularly and consistently applied by the court. **James v. Kentucky**, 466 U.S. 341, 348 (1984). A state procedural rule is independent if it does not depend on a federal constitutional ruling. **Ake v. Oklahoma**, 470 U.S. 68, 75 (1985).

*Henderson v. Cockrell*, 333 F.3d 592, 604 (5th Cir. 2003), *cert. denied*, ___ U.S. ___ (26 Jan. 2004) (No. 03-6979) (some citations omitted; quotation marks omitted).

The district court held the procedural ground was adequate because this rule is generally followed. *E.g., Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). Although the district court did not hold this procedural ground independent, failing to make a written request for a jury instruction is obviously independent of any merits-based constitutional claim.

Because the district court denied habeas relief based on the procedural default, the test for a COA has two parts. Fuentes must show: that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling". *Slack*, 529 U.S. at 484. If we hold that the district court's decision to invoke the procedural bar was not debatable, we need not address the second prong of this test. *Id*.

Fuentes contends his claim falls under an exception to the procedural default doctrine because, even though the claim may have been defaulted in some technical sense, he substantially complied with the relevant state law. *E.g., Lee v. Kemna*, 534 U.S. 362 (2002); *Osbourne v. Ohio*, 495 U.S. 103, 123 (1990); *Douglas v.*

*Alabama*, 380 U.S. 415, 422 (1965). The district court refused to hold Fuentes' claim falls under this exception.

In this regard, a very narrow exception exists when finding a procedural default is a "ritual of meaningless form" which "furthers no perceivable state interest". *Osbourne*, 495 U.S. at 124 (citations omitted). The Texas statute requiring a proposed jury instruction be made either in writing or on the record is not a meaningless ritual — far from it. The rule furthers the important state interest of providing meaningful appellate review of issues that were fully resolved before the trial court. The district court's procedural ruling is *not* debatable among reasonable jurists.

2.

As discussed, we need not address the district court's alternative determination on the merits, because its decision on the procedural default is not debatable. We will do so, however, because the district court did so.

a.

The district court denied relief on the merits of the lesser included offense claim; that claim was based on *Beck v. Alabama*, 447 U.S. 625, 638 (1980) (holding where the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, a State is constitutionally prohibited from withdrawing that option from the jury). Respondent challenges the

14

application of **Beck**, but did not do so in district court; therefore, we will not consider this challenge on appeal. Moreover, we assume that **Beck** applies and hold, even under this heightened constitutional standard, that a COA should *not* issue.

A death penalty sentence may not be imposed if the jury was not allowed to consider a lesser included offense that is supported by the evidence. *See* **Beck**, 447 U.S. at 637; **Dowthitt v. Johnson**, 230 F.3d 733, 757 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). Under Texas law, felony murder is a lesser included offense of capital murder. *See* **Ex Parte McClelland**, 588 S.W.2d 957, 959 (Tex. Crim. App. 1979). To establish that he is constitutionally entitled to a lesser included offense instruction, Fuentes must demonstrate that the record contains evidence permitting a rational jury to find him guilty of felony murder and acquit him of capital murder. *See* **Jones v. Johnson**, 171 F.3d 270, 274 (5th Cir.) (citations omitted), *cert. denied*, 527 U.S. 1059 (1999).

A felony murder is one in which a person "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes death of an individual". TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003). The requisite mental state for felony murder must not rise to

intentional or knowing conduct. *See **Medina v. State***, 7 S.W.3d 633, 639 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000). Capital murder, on the other hand, requires (under these facts) that the actor intentionally cause the death of another in the course of committing or attempting to commit a robbery. TEX. PENAL CODE ANN. § 19.03 (Vernon 2003).

Fuentes maintains the felony murder instruction is supported by the evidence because he and Templeton testified that: robbery was their objective; neither anticipated someone would be killed; and the robbery was complete when the victim was shot and the robbers were in flight from the store. The record reflects, however, that Fuentes ran up to the victim, shot him twice in the chest and fled. The district court held: even though Fuentes may not have had the intent to kill when he began, his shooting the victim twice and fleeing demonstrates that he formed the intent to kill during the robbery. The district court's decision is supported by the record; reasonable jurists would *not* debate that Fuentes formed the intent to kill during the robbery.

b.

Fuentes also asserts that he was entitled to the felony murder instruction because trial testimony casts doubt on the identity of the shooter and supports that Fuentes was mistakenly so identified. Fuentes did not present this contention in his amended petition for habeas relief in the district court; he raised it only

16

in opposition to summary judgment.  The district court did not address it in its denial of relief.  Because Fuentes did not make this claim until his opposition to summary judgment, he has waived it; we will not address it in his COA request.

In the alternative, Fuentes' mistaken identity defense has no bearing on the felony murder instruction.  If the jury had believed that defense, it would have acquitted him of capital murder, irrespective of a lesser included offense instruction.

C.

Fuentes' final COA request concerns the Court of Criminal Appeals' refusal to review the sufficiency of the evidence to support the jury's negative answer to the mitigation special issue at the punishment phase.  Mitigating evidence is "evidence that a juror might regard as reducing the defendant's moral blameworthiness".  TEX. CRIM. PROC. CODE ANN. § 37.071 Sec. 2(f)(4) (Vernon 2003).  The Court of Criminal Appeals does not review the sufficiency of mitigation evidence as a matter of law, because of the jury's unbridled discretion.  *Fuentes*, 991 S.W.2d 267 at 280 (citing *Green v. State*, 934 S.W.2d 92, 106-07 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997)).  On the other hand, it does evaluate the sufficiency of the evidence for finding guilt and that contributes to the death sentence for the future dangerousness special issue.  *Beazley v. Johnson*, 242 F.3d 248, 261 (5th Cir.), *cert. denied*, 532 U.S. 949 (2001); *McFarland v. State*, 928 S.W.2d

17

482 (Tex. Crim. App. 1996), *overruled on other grounds*, **Mosley v. State**, 983 S.W. 2d 249, 263 (Tex. Crim. App. 1998), *cert. denied*, 519 U.S. 1119 (1997).

At the punishment phase, Fuentes introduced character evidence showing:  he was a good person, an athlete and a hard worker; he was profoundly affected by the death of his grandmother and fell into the "wrong crowd" after her death; after this crime, he became a responsible person; and he was gainfully employed and engaged to be married.  Fuentes contends:  the refusal by Texas courts to review the correctness of a jury's negative answer to the mitigation special issue violates the Eighth Amendment by denying Texas capital defendants "meaningful appellate review", *e.g.*, **Parker v. Dugger**, 498 U.S. 308, 321 (1991) (emphasizing the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally); **Clemons v. Mississippi**, 494 U.S. 738, 749 (1990) (noting that meaningful appellate review of death sentences promotes reliability and consistency); and the Supreme Court approved Texas' capital sentencing scheme with the understanding that there would be prompt judicial review of a jury's decision to impose the death penalty, including a focus on whether mitigating factors were present, **Jurek v. Texas**, 428 U.S. 262, 273 (1976).

As noted, in death penalty cases, the Court of Criminal Appeals does review the future dangerousness special issue; it

18

holds this affords defendants meaningful review. *See* ***McFarland***, 928 S.W.2d at 482. Fuentes contends, however, that under the current Texas capital sentencing statute, the ***Penry v. Lynaugh***, 492 U.S. 302 (1989), *abrogated on other grounds*, ***Atkins v. Virginia***, 536 U.S. 304 (2002), special issue (considering the defendant's background and moral culpability in the light of all the evidence) is now the primary vehicle for consideration of mitigating evidence and thus should be reviewed.

The district court denied habeas relief on this issue because our court has consistently held that Texas' refusal to review the sufficiency of mitigating evidence does not violate the constitutional right to meaningful review. *See* ***Woods v. Cockrell***, 307 F.3d 353, 359-60 (5th Cir. 2002); ***Beazley***, 242 F.3d at 261; ***Hughes v. Johnson***, 191 F.3d 607, 621-23 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000). The district court's decision is *not* debatable among reasonable jurists because the Supreme Court has never *required* review of mitigating factors on appeal; it has held only that re-weighing aggravating and mitigating factors on appeal is constitutional. *See* ***Hughes***, 191 F.3d at 622.

## III.

For the foregoing reasons, a COA is

***DENIED.***

19