# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 19, 2010

No. 08-40802
Summary Calendar

Charles R. Fulbruge III
Clerk

STEVEN RICHARD HORNER

Petitioner – Appellant

v.

RICK THALER, Director, Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent – Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:07-CV-336

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Texas prisoner Steven Richard Horner appeals the district court's denial of habeas relief on his claim that he was denied counsel in violation of the Sixth Amendment. For the following reasons, we affirm the denial of relief.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-40802

**FACTS AND PROCEEDINGS**

In 2000, Horner was indicted for aggravated sexual assault. He was accused of sexual contact with a child under fourteen identified as "C.S." The victim, her mother, and her younger sister subsequently died in an unexplained house fire. The original indictment was dismissed as a result, but Horner was later re-indicted for the same offense in February 2001.

While awaiting trial, Horner was incarcerated at the San Patricio County Jail. James Jones was his cell neighbor, and, beginning in early April 2001, Jones developed a relationship with Horner. They spoke about several topics, including religion and their jobs, backgrounds, and families. According to Jones's trial testimony, Horner said that he had "got" C.S. in various locations, including a cemetery, a parking lot, a back road, and a car wash. Jones testified that Horner stated that, following this latter assault, "he had to go and clean up the car and [the girl]," and that although she fought against him a few times, she eventually relented when Horner threatened to hurt her mother and sister. During one of their conversations, Horner stated that he had given C.S. a sexually transmitted disease, that he had contracted it from her mother, and that "it was just staying in the family." At no time during his testimony did Jones specify when Horner had made the various inculpatory statements.

Prior to trial, Horner obtained documents showing that Jones agreed to cooperate with the police in investigating the deaths of the victim and her family. Horner appears to have been a target of this investigation. During trial, Jones testified that he did not approach authorities until after Horner had made statements inculpating himself on the sexual assault charge. Horner also obtained a copy of Jones's notes, recounting one of their conversations in which Horner admitted to "hav[ing] sex" with the girl. Although Jones ultimately received probationary sentences for two charges pending against him, he averred that his trial testimony was provided out of concern for his own daughters.

2

After hearing testimony from additional witnesses, the jury convicted Horner and he was sentenced to ninety-nine years' imprisonment. The conviction was affirmed on direct appeal by the Texas Court of Appeals, *Horner v. State*, 129 S.W.3d 210 (Tex. Ct. App. 2004), and the Texas Court of Criminal Appeals denied further review. Horner filed an application for postconviction relief in state court, claiming, *inter alia*, that the admission of Jones's testimony violated his Sixth Amendment right to counsel because Jones was acting as an agent of the police and deliberately elicited the inculpatory statements. The Texas Court of Criminal Appeals denied the application without written reasons. Horner then filed a federal habeas petition pursuant to 28 U.S.C. § 2254, to which the State filed an answer and motion for summary judgment. In a written opinion, the magistrate judge recommended denying relief on all claims. The magistrate judge concluded that use of the statements at trial did not violate Horner's Sixth Amendment right to counsel because Horner had not shown that Jones was acting as an agent of the police when Horner made the statements. The recommendation was adopted by the district court, which entered judgment in favor of the State. This court granted a COA on the Sixth Amendment issue.

## STANDARD OF REVIEW

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (quotation omitted). Horner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), and the procedures and standards imposed by that Act apply. *Id.* Under AEDPA, a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "Because a federal habeas court only reviews the reasonableness of the state court's ultimate

decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  In such a case, this court: "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Id.*

## DISCUSSION

Horner's claim falls under the Sixth Amendment rubric announced in *United States v. Massiah*, which held that a defendant may not have "used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel."  377 U.S. 201, 206 (1964).  "A *Massiah* violation has three elements: (1) the Sixth Amendment right to counsel has attached; (2) the individual seeking information from the defendant is a government agent acting without the defendant's counsel's being present; and (3) that agent 'deliberately elicit[s]' incriminating statements from the defendant."  *Henderson v. Quarterman*, 460 F.3d 654, 664 (5th Cir. 2006) (alteration in original) (quoting *Massiah*, 377 U.S. at 206).

Texas does not dispute that Horner's right to counsel had attached, but denies that Jones was a "government agent" when Horner made the incriminating statements.[1]  In its brief, the State concedes that an agency relationship existed between it and Jones as of April 24, 2001, when Jones's

---

[1] The State's alternative legal argument that Jones's cooperation was in connection with a homicide investigation separate from Horner's pending sexual assault charge, and that this legitimate purpose cures any violation of the offense-specific right to counsel is foreclosed by binding Supreme Court precedent.  *See Maine v. Moulton*, 474 U.S. 159, 180 (1985) ("[I]ncriminating statements pertaining to pending charges are inadmissible at the trial of those charges, not withstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.").

lawyer sent a letter to the district attorney informing him of Jones's cooperation.

Horner seizes on the April 24 inception of Jones's cooperation and a copy of Jones's notes dated April 28 as evidence that Jones was an agent of the State when the inculpatory statements were made. In the notes, Jones recounts Horner's responses to questions posed by Jones. According to the notes, Horner admitted to "hav[ing] sex" with C.S. and speculated that if he had an STD, he had gotten it from C.S.'s mother. A portion of Jones's testimony appears to be premised on this interaction. But Jones testified to additional incriminating statements by Horner, and Horner makes no attempt to argue that these latter confessions post-dated Jones's cooperation. At best, Horner could show that Jones's testimony related to the content of the April 28 notes was erroneously admitted.[2]

Assuming that such an error occurred, it was harmless. Putting aside the testimony based on the April 28 notes, there was overwhelming evidence of Horner's guilt, including the victim's identification of Horner, medical evidence linking Horner to the victim, and multiple inculpatory statements which are unrelated to the April 28 notes and which are not shown to post-date Jones's cooperation. In view of that evidence, the introduction of the allegedly tainted testimony did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2] The district court found that the notes did not necessarily show that Horner confessed after Jones began cooperating.