*657 DIANA GRIBBON MOTZ, Circuit Judge,
dissenting:
With respect, I dissent. The district court understood and deferred to the facts found by the state habeas court, and then correctly concluded that the state court unreasonably applied Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to those facts. Accordingly, we should affirm its grant of the writ of habe-as corpus to Steven Watkins.
I.
I agree with the majority that the state court did not base its denial of habeas relief on an unreasonable finding of the facts and that a federal court reviewing a state habeas ruling must defer to the state court’s factual findings. But for these very reasons, I cannot agree that the district court erred in granting habeas relief. For in holding that the district court im-permissibly “placed its own gloss upon the state court’s factual findings,” the majority itself does precisely that. This move enables the majority to reconstruct the narrative of this case to one more to its liking, but one that the state court never found, the State never espoused, and the record simply does not support.
A jury found Watkins guilty of the West Virginia crime of attempted robbery in the second degree, which requires proof that the would-be robber placed “the victim in fear of bodily injury.” W. Va.Code § 61-2-12(b). At the core of the majority opinion is the erroneous conclusion that the state habeas court did not find that before trial the prosecution possessed evidence that the victim of the attempted robbery had made an inconsistent statement about an element of the charged offense — i.e., that he had not been “in fear of bodily injury” during the attempted robbery, as was required for conviction. The concurrence then adds some equally flawed arguments in an attempt to bolster this- conclusion.
On the basis of these mistaken theories, the majority holds that the prosecutor’s ■failure to inform the defense about this impeachment evidence did not violate Brady. But careful review of the record requires the contrary conclusion. The state habeas court did indeed find that before trial the prosecutor had evidence of the critical witness’s lack-of-fear statement. And the prosecutor’s failure to inform the defense of this evidence clearly violated Brady.
The factual finding of the state court at issue here reads in its entirety as follows:
The Court FINDS that, at some time after the trial of this matter, trial counsel [Adkins] was told that Mr. Zimm [the witness] said he was not “afraid” at the time of the incident at issue. Assistant Prosecuting Attorney Brian Parsons, [E]sq. discussed with Mr. Zimm the definition of the word “fear” as it applied to the elements of the crime at issue, and that Mr. Parsons informed Mr. Zimm that if the element of fear did not exist, then the ease could not be proven at trial. The discovery provided to the defense did not contain any reference to Mr. Zimm’s alleged statement that he was not “afraid” or to the above described conversation between Mr. Parsons and Mr. Zimm.
J.A. 211. The state court found that after trial, Defense Counsel Adkins was told that the victim-witness, Mike Zimm, stated that he had not been afraid during the charged attempted robbery. The first *658 sentence of the above paragraph makes that clear. Equally clear is that in the second sentence, the state court found that before trial, Prosecutor Parsons and witness Zimm had a conversation in which Parsons told Zimm that without evidence of his fear during the alleged attempted robbery, “the case could not be proven at trial.” And in the third sentence, the state court indisputably found that the prosecution did not turn over to the defense, prior to trial, any evidence about this conversation or about any statement the witness, Zimm, made during the conversation.
A.
The majority opinion focuses on the timing of Zimm’s alleged laek-of-fear statement, holding that the district court erred in concluding the state court found Zimm’s alleged lack of fear statement to have occurred before trial. But it is the majority that errs here. The timing of Zimm’s alleged statement has never been in dispute. The State has never contended that Zimni made the alleged statement to the prosecutor after trial, and does not do so on appeal before us.
To the contrary, Prosecutor Parsons himself, in responding to the habeas petition in state court, recounted that the conversation about the fear element took place prior to trial in the course of a discussion about the necessity of proof of this element at trial. Thus, in the State’s written response to the habeas petition, Parsons explained:
[I] spoke with the [sic] Mr. Zimm on at least two occasions prior to the trial of the matter to [sic] as a part of the trial preparation process. I recall having a conversation with Mr. Zimm about the definition of the word “fear” as it applied to the legal elements requiring proof in the trial of the respondent. Mr. Zimm did not state that he was “never afraid”, but rather he sought a better understanding of what fear meant in the context of this case. (The Court should understand that a certain amount of bravado existed as to the relationship between [me] and Mr. Zimm and a reluctance to express fear months after an incident is natural between two men.) I did, however, inform Mr. Zimm that if the element of fear did not exist the case could not be proven at trial.
J.A. 303-04 (emphasis added). Absent from Parsons’ explanation to the state ha-beas court is any suggestion that the contention in the habeas petition as to the timing of Zimm’s alleged lack of fear statement was wrong — i.e., that the statement did not take place before trial. To the contrary, Parsons defended his nondisclosure of evidence of Zimm’s statement by placing it in the context of pre-trial witness “preparation” regarding proof of the fear element at trial.
Moreover, Prosecutor Parsons took exactly the same approach at the evidentiary hearing before the state habeas court. When he cross examined Defense Counsel Adkins, Parsons neither challenged Adkins’ recollection of his post-trial conversation with Parsons nor suggested that Zimm could have made the alleged statement after trial. See J.A. 200-01; 195. Rather, Parsons again sought to place Zimm’s alleged statement within their pretrial conversation about the fear element. In sum, the state prosecutor’s consistent account — in his written response to the state habeas petition and at the evidentia-ry hearing before the state court — was that Zimm’s alleged fear statement occurred before trial.
It is clear from the state habeas court’s factual findings that the court accepted and adopted Prosecutor Parsons’ uncon-troverted account as to the timing of the alleged fear statement. Indeed, the state court’s very wording closely mirrors that of the prosecutor’s response to the habeas *659 petition. Compare J.A. 211, with J.A. 303-04. Thus, in context, there is only one way to read the first two sentences of the state court’s factual findings: the initial sentence describes how, after trial, Prosecutor Parsons told Defense Counsel Adkins that the witness, Zimm, stated he had not been afraid; and the second sentence places this statement in the context of a pre-trial conversation between prosecutor and witness about the necessity of proof of the element of fear at trial. This conclusion, contrary to the majority’s suggestion, does not conflate the conversation between Parsons and Zimm before trial with the conversation between Parsons and Adkins after trial. Rather, it recognizes that in his post-trial conversation with Defense Counsel Adkins, Prosecutor Parsons relayed the substance of his pre-trial conversation with Zimm.
On appeal before us, the State repeats this very same version of the critical events for a third time. Its brief to this court is utterly bereft of any suggestion that the district court’s conclusion about the timing of Zimm’s alleged statement is incorrect. To the contrary, the district court’s view that the state court found that the alleged statement occurred before trial is one in which the State explicitly concurs. Thus, in its appellate brief, the State recounts: “After finding that Mike Zimm [the witness] made a pre-trial statement to the prosecutor that he was not ‘afraid’ during the attempted robbery, the state [habeas] court concluded that no Brady violation had occurred.” Appellant Br. 13 (emphasis added); see also id. at 20-21.
In sum, the record offers no support for the majority’s conclusion that the district court “impermissibly alter[ed]” the state habeas court’s factual findings to conclude that Zimm’s alleged statement to the prosecutor occurred before trial. That the state court found that Zimm’s alleged statement occurred before trial — a view espoused by the State itself — is the only reading that finds support in the record.[1]
B.
The concurrence offers some additional arguments in an attempt to bolster the decision to deny habeas relief to Watkins. None is convincing.
First, the concurrence adopts the sole argument offered by the State itself as to why the district court assertedly erred in concluding that the state court had found that Prosecutor Parsons told Adkins about Zimm’s alleged lack-of-fear statement. Although the state court expressly found that “at some time after the trial of this matter,” Adkins “was told that Mr. Zimm said he was not ‘afraid’ at the time of the incident,” J.A. 211, the concurrence contends that, in doing so, the state court “clearly declined” to find that it was Prosecutor Parsons who told Adkins this. The State similarly asserts that an “unidentified individual” told Adkins “about an alleged statement by Zimm.” Appellant Br. 18.
By using the passive voice, the state habeas court did not identify by name the individual who, after trial, told Defense Counsel Adkins that Zimm had said, prior *660 to trial, that he was not afraid. And it may well be that in his federal habeas petition, Watkins overstated the strength of Adkins’ testimony describing the post-trial conversation in which Prosecutor Parsons told him about witness Zimm’s statement. But we must defer to the state court’s finding that Adkins “was told” that Zimm stated he was not afraid at the time of the robbery, J.A. 211, in light of the evidence that was before the state court. As the district court concluded, that evidence offers not even a suggestion that anyone other than Prosecutor Parsons told Adkins about 'Zimm’s alleged statement. Rather, the only possible conclusion to draw from the record is that Parsons is the person who relayed this information to Adkins.
To be sure, Adkins initially indicated that he did not “recall” a conversation in which Parsons told him that Zimm had made the lack-of-fear statement. J.A. 194. Immediately thereafter, however, Adkins corrected himself and testified that he did recall this conversation with Parsons. Adkins used qualifying words and equivocal phrases about what, precisely, he heard, and suggested that his “contemporaneous note would probably be more accurate than [his] memory.” J.A. 195. But despite his qualifications about what was said during this conversation, Adkins was not at all equivocal about who said it. It was the prosecutor: Parsons. Id. When asked whether “Parsons suggested that Mr. Zimm had told him he wasn’t afraid of Mr. Watkins,” Adkins responded in the affirmative. Id. at 194. Moreover, throughout the rest of his testimony, Adkins identified Parsons, and only Parsons, as the person who told him about Zimm’s alleged lack-of-fear statement. Id. at 194-95 (when asked about his “independent recollection of that conversation,” responding “yes ... Mr. Parsons had stated something to the effect that Mr. Zimm might not have been scared of Mr. Watkins;” and when asked if he recalled “who was present at the time that it was stated,” responding “other than me and Mr. Parsons, no.”).
No evidence was presented at the habe-as hearing that anyone else relayed this information to Adkins. No evidence was presented to suggest that it was not Parsons who made the statement to Adkins. And Prosecutor Parsons himself, appearing as the State’s counsel at the habeas hearing, did not dispute that it was he. Thus, in finding that after trial, Adkins “was told” that Zimm said he was not afraid during the attempted robbery, J.A. 211, the state habeas court necessarily found that Prosecutor Parsons told Adkins this.[2]
Second, the concurrence maintains that in his written statement, Prosecutor Parsons asserted “that he had a pretrial conversation with Zimm about the element of fear that did not include the alleged lack-of-fear statement,” and “explicitly] deni[ed] that Zimm made the alleged lack-of-fear statement.” (emphasis in concurrence). But in fact Parsons, who the state habeas court undoubtedly recognized had every reason to minimize Zimm’s “lack-of-fear” during the robbery, nowhere assert *661 ed — in Ms written statement or orally— that their pre-trial conversation “did not include [Zimm’s] alleged lack-of-fear statement.” Nor did Parsons “explieit[ly] den[y] that Zimm made the alleged lack-of-fear statement.” And Parsons never disputed that he told Adkins, after trial, about Zimm’s alleged lack-of-fear statement. In other words, Prosecutor Parsons, although in the courtroom when accused of a Brady violation, never denied that he possessed during trial helpful impeachment evidence that he failed to turn over to the defense.
Rather, Parsons attempted to finesse exactly what witness Zimm said at their pretrial meetings. Thus, in his written statement to the state habeas court, Parsons parsed and qualified their exchanges. He did not explicitly deny that he acquired exculpatory information at that time, nor did he deny that Zimm had told him he might not have been afraid at the time of the attempted robbery. Instead, Parsons simply stated that Zimm “did not state that he was ‘never afraid.’ ” J.A. 304. These words, of course, leave open the possibility that Zimm did say something short of never being afraid but still not amounting to the required not in “fear of bodily injury.” Prosecutor Parson’s statement is certainly not the categorical denial one would expect from a prosecutor accused of a Brady violation.
Moreover, Parsons acknowledged in the same written statement that “a certain amount of bravado existed as to the rela-tionsMp between [himself] and Mr. Zimm,” and thus Zimm had “a reluctance to express fear months after” the attempted robbery. Id. And Parsons conceded in his statement that he had informed Zimm “that if the element of fear did not exist[,] the case could not be proven at trial.” Id. Thus, upon consideration of the entire record before it, the state habeas court was certainly justified in making the factual finding that it did; ie., that “at some time after the trial of this matter, [Watkins’] trial counsel was told that Mr. Zimm said he was not ‘afraid’ at the time of the incident at issue.” J.A. 211. The concurrence apparently disagrees with the finding, but we must defer to a state habeas court’s factual findings unless unreasonable. 28 U.S.C. § 2254(d)(2). Nothing is unreasonable about this finding.
In sum, the record is devoid of support for the concurrence’s suggestion that the experienced district court judge “rewrote the state court’s factual finding” in order to conclude that it was Parsons who told AdMns that Zimm made the alleged lack-of-fear statement. Based on the record before the state court, the only possible source of this information regarding Zimm’s alleged statement was Prosecutor Parsons, who never denied that he had possessed exculpatory evidence prior to WatMns’ trial. There was, and is, no basis for the state court to have found that Adkins “was told” about Zimm’s alleged lack-of-fear statement without also finding that Parsons is the person who told him about it.
C.
My colleagues seek to exploit the state habeas court’s failure to more explicitly articulate factual findings that were defer, as we must, to those implicit factual findings of a state habeas court, which are compelled by its explicit findings: i.e., it was Prosecutor Parsons who told Adkins, after trial, that Zimm had stated, before trial, that he was not afraid during the attempted robbery.
The concurrence refuses to afford deference to these implicit factual findings because it maintains that they are “inconsistent” with the state court’s decision to “deny Watkins’. Brady claim.” Not so. The finding that a prosecutor possessed *662 and failed to disclose to the defense favorable impeachment evidence is not inconsistent with a denial of habeas relief. A prosecutor’s withholding of such evidence does not automatically trigger a Brady violation. Rather, the evidence withheld must also be material. Brady, 373 U.S. at 87, 83 S.Ct. 1194. Thus, in a given case, a state habeas court could certainly find that a prosecutor had withheld exculpatory evidence, but conclude that the evidence was not material, and so deny Brady relief. That apparently is precisely what the state court did here. For after making its findings, it summarily concluded that the State’s actions “did not violate the dictates of Brady v. Maryland,” without specifying why this was so. This conclusion — that the prosecution withheld evidence without violating Brady — is not logically inconsistent with the denial of Watkins’ Brady claim.[3]
Moreover, even were the state court’s factual findings somehow inconsistent with its judgment, we could not withhold deference on that ground. The concurrence errs in suggesting that we owe deference to implicit findings only when they are “consistent with” or “necessary to” the state court’s judgment. That is simply not the law. Rather, the presumption of correctness afforded to a state habeas court’s factual findings broadly “extends not only to express findings of fact, but to the implicit findings of the state court.” Garcia v. Quarterman, 454 F.3d 441, 444 (5th Cir.2006); see also Taylor v. Horn, 504 F.3d 416, 433 (3d Cir.2007) (same); Lujan v. Tansy, 2 F.3d 1031, 1035 (10th Cir.1993) (same). Were the rule otherwise, federal courts could read ambiguities into state habeas findings and then invent scenarios to resolve them that justify denying habe-as relief. AEDPA deference does not permit this.[4]
To be sure, as the concurrence notes, when appropriate, on AEDPA review federal courts do imply factual findings that align with the state court’s ultimate judgment. That is undoubtedly the correct course in a case where “it can scarcely be doubted from [the state court’s] written opinion that [the petitioner’s] factual contentions were resolved against him.” LaVallee v. Delle Rose, 410 U.S. 690, 692, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); see also Marshall v. Lonberger, 459 U.S. 422, 433, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (implying factual finding from the judgment where state court’s “failure to grant relief was tantamount to an express finding against ... the defendant”). But this is not such a case. Here, “it can scarcely be doubted” from the state court’s “written opinion,” LaVallee, 410 U.S. at 692, 93 S.Ct. 1203 (1973) — including its express findings of fact and “the inferences fairly deducible from these facts,” Marshall, 459 U.S. at 435, 103 S.Ct. 843 — that Watkins’ factual contentions were resolved in his favor, notwithstanding the court’s ultimate judgment against him.
In sum, when viewed in light of the evidence before it, the state court’s factual findings compel only one version of events: *663 that Parsons told Adkins, after trial, that Zimm stated, before trial, that he was not afraid during the attempted robbery. We cannot eschew a straightforward reading of the state court’s factual findings simply because it renders that court’s ultimate judgment unreasonable. Rather, AEDPA expressly instructs that we grant habeas relief in such circumstances. See 28 U.S.C. § 2254(d).[5]
II.
Of course, Watkins cannot prevail on his Brady claim simply by proving that, prior to trial, the prosecution possessed favorable impeachment evidence which it did not disclose.[6] Watkins must also show that such evidence was material, Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), and that the state court unreasonably determined that the prosecution’s failure to disclose such evidence did not violate Brady. Harrington v. Richter, 562 U.S. 86, 97-98, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); see also 28 U.S.C. § 2254(d)(1).
The test for materiality in this context is well-established. Undisclosed evidence is material if “there is a reasonable probability that, had the evidence been disclosed [to the defense], the result of the proceeding would have been different.” Smith v. Cain, — U.S. -, 132 S.Ct. 627, 630, 181 L.Ed.2d 571 (2012) (quotation marks and citation omitted). A court considering the materiality of undisclosed evidence “need not be convinced to an absolute[] certainty that proper disclosure[ ] ... would have resulted in a different verdict.” Monroe v. Angelone, 323 F.3d 286, 316 (4th Cir.2003). For “[a] reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence,” but rather that “the likelihood of a different result is great enough to undermine confidence in the outcome of the trial.” Smith, 132 S.Ct. at 630 (citing Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quotation marks and alterations omitted)).
In this case, the record makes clear that Zimm’s trial testimony that he had feared the defendant during the alleged attempted robbery was fundamental to a successful prosecution. The record is also clear that the element of fear was fiercely contested throughout trial. Thus, the likelihood of a different result had the prosecution disclosed evidence that Zimm stated before trial that he had not been afraid during the alleged attempted robbery is great enough to undermine confidence in the outcome of the trial.
Critically, at trial, Zimm was the State’s primary witness, and the State’s only witness who testified to being in fear of bodily injury from defendant Watkins. The jury was properly instructed that, to prove at *664 tempted robbery in the second degree, the State had to prove beyond a reasonable doubt that Watkins committed an “assault that placed Mike Zimm in fear of bodily harm.” J.A. 130. Prosecutor Parsons himself confirmed Zimm’s role as the key witness on the fear element in his memorandum to the state habeas court, recounting that he had “informed] Mr. Zimm that if the element of fear did not exist the case could not be proven at trial.” J.A. 304.
The State nevertheless contends that evidence that Zimm stated before trial that he had not been afraid was not material because other evidence at trial suggested that Zimm had in fact been fearful. To this end, the State cites evidence that the other pharmacy employees knew of a rash of recent pharmacy robberies in the area; that Watkins’ clothing “made clear” that he intended to rob the pharmacy; that Watkins had his hands at his waistband, “where he could have had a weapon”; and that another pharmacy employee described how Zimm’s facial expression changed when Watkins entered the store, thereby “corroborating] Zimm’s description of his fear.” Appellant Br. at 21-22 (emphasis in original).
As the district court noted, however, all of this evidence was relevant only to show that Zimm was credible and to corroborate his trial testimony about being afraid. J.A. 402. Of course, as the State suggests, the jury could have discounted evidence of Zimm’s pre-trial lack of fear statement, even if the State had disclosed it. But this argument “merely leaves us to speculate about which of [Zimm’s] contradictory declarations the jury would have believed.” Smith, 132 S.Ct. at 630. Such speculation does not render evidence immaterial. For, although “the State’s argument offers a reason that the jury could have disbelieved” Zimm’s alleged lack of fear statement, it “gives us no confidence that it would have done so.” Id. (emphases in original).
Not only was Zimm’s trial testimony that he was in fear of the defendant literally elemental to the prosecution’s case, attacking the fear element was the sine qua non of the defense’s trial strategy. From opening statement to closing argument, the defense repeatedly and vigorously contended that the evidence did not demonstrate that an assault (requiring fear of bodily harm) had taken place. See, e.g., J.A. 14; 138-39. At the close of the State’s case, the defense moved for a directed verdict, relying in large part on the State’s failure to prove fear. Defense Counsel Adkins argued that because his client' did not swing at Zimm, did not brandish a weapon, and did not verbally threaten him, Zimm could not have been in fear of bodily harm. J.A. 98. The State responded that during trial Zimm “said that he was fearful,” that Zimm had also testified that he was aware of several recent pharmacy robberies, and that the defendant had been dressed and behaved in a way that caused Zimm to “have apprehension.” J.A. 100-01. In denying the motion for directed verdict, the state trial court twice remarked that “it’s a close call,” but ultimately determined that “the jury may well find that Mr. Zimm was, in fact, under assault and ... feared for himself.” J.A. 104.
Plainly then, evidence that Zimm had stated, before trial, that Watkins had not caused him to be afraid would have been crucial to the defense. The defense could have used that evidence to argue reasonable doubt, to reinforce other evidence suggesting that Zimm was not afraid, or perhaps most critically, to undermine Zimm’s credibility on the central issue of fear. “[W]hen the witness in question supplied the only evidence of an essential element of the offense,” impeachment evi *665 dence is frequently material, “especially if the undisclosed evidence was the only significant impeachment material.” See United States v. Parker, 790 F.3d 550, 558 (4th Cir.2015) (quotation marks and citation omitted). Indeed, we have noted that when, as here, “the jury had to believe that [the witness] was credible and that his version of events was in fact truthful and accurate in order to support [the defendant’s] conviction,” the materiality of evidence impeaching that witness is “manifest.” See Wolfe v. Clarke, 691 F.3d 410, 424 (4th Cir.2012) (quotation marks and citation omitted).
Watkins established before the state ha-beas court a clear Brady violation: the prosecutor possessed and did not disclose evidence that a witness said that he was not afraid during the alleged attempted robbery; fear was an essential element of the crime; that witness was the State’s key witness on the fear element; and the fear element was hotly contested throughout the trial. Given the critical nature of the impeachment evidence here, it was unreasonable for the state habeas court not to conclude that the State had violated its Brady obligations.
The district court properly granted ha-beas relief. The majority’s contrary holding piles a further injustice on a man already victimized by improper governmental action.

. Indeed, if the state habeas court had found that the alleged statement occurred after trial, that determination would have been unreasonable. The only evidence as to the timing of Zimm’s alleged statement that was presented to the state habeas court was Parsons’ account that it took place before trial. For the state court to have disregarded this account and instead concluded that the alleged statement occurred at some other time would have been flatly contradicted by the record before it, and thus a patently unreasonable finding of fact. Such unreasonable fact findings, of course, provide the basis for habeas relief. See 28 U.S.C. § 2254(d)(2).

. The concurrence finds it significant that Watkins could have presented a stronger case to support this finding and repeatedly argues that I have '‘shiftfed] the burden to the state to disprove [Watkin’s] allegations.” These arguments misconstrue what is simply the proper deference due to a state habeas court's factual findings. Of course, Watkins’ cáse, like most others, in retrospect could have been stronger. But when considered in conjunction with the prosecution's lackluster showing at the evidentiary hearing, Watkins certainly provided a sufficient basis for the state court’s finding that Prosecutor Parsons told Adkins about Zimm's alleged statement. The critical fact remains that the state habeas court made this finding, and AEDPA requires that we owe it deference.

. However, as explained below, the evidence withheld here is material and so in this case the state court erred as a matter of law in denying habeas relief.

. Even when we review a state court's summary adjudication of a habeas claim, in which the court has made no explicit factual findings to which we can defer, we infer implicit findings "from ... [the state court’s] opinion and the record ” of the state habeas court — not from the judgment alone. Blankenship v. Hall, 542 F.3d 1253, 1272 (11th Cir.2008) (emphasis added). As the concurrence concedes, implied factual findings, even those that may be consistent with the state court’s judgment, "'cannot.be imagined from thin air.' ” Id. at 1272 n. 5 (quoting Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir.1992)).

. The concurrence contends this approach "turns AEDPA deference on its head," but it is the concurrence that has it backwards. The proper approach, of course, is to first examine the state court’s factual findings and to. accord them a "presumption of correctness," deferring to them unless unreasonable. 18 U.S.C. § 2254(e)(1). The concurrence, however, on the basis of its evaluation of the strength of Watkins' evidence, assertedly gives the state court "the benefit of the doubt” by reading that court’s factual findings to accord with the concurrence’s own evaluation of the evidence. It is not surprising that, starting from the wrong premise, the concurrence arrives at the wrong conclusion.

. The State does not dispute that evidence of Zimm’s statement regarding fear was favorable to Watkins. And the state habeas court expressly found that "[t]he discovery provided to the defense did not contain any reference to Mr. Zimm’s alleged statement that he was not ‘afraid’ or to the above described conversation between Mr. Parsons and Mr. Zimm.” J.A. 211. Thus, Watkins has satisfied these Brady requirements.