# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2012

No. 11-20238

Lyle W. Cayce
Clerk

DINH TAN HO,

Petitioner-Appellant

v.

RICK THALER, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-920

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The petitioner, Dinh Tan Ho, was convicted of non-capital murder for the killing of David Bundy. Ho now appeals the district court's grant of summary judgment in favor of respondent Rick Thaler, which resulted in the denial of Ho's 28 U.S.C. § 2254 habeas corpus petition. On appeal, he argues that the prosecutor violated his due process rights by knowingly using false and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20238

misleading evidence to prosecute the case. Because Ho did not show that the misleading evidence was material to his conviction or prejudicial to his right to a fair trial, we AFFIRM the district court.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of December 7, 2001, David Bundy, Eric Harrison, Bayard Hill, Mike Miller, and Jabare Rattler left a Houston nightclub in Harrison's car, driven by Bundy. While driving in downtown Houston, the car nearly collided with a blue Honda Civic occupied by three Asian men. At the next stoplight, Rattler got out of the car and shouted obscenities at the occupants of the Honda Civic. When the light turned green, Rattler got back into the car and Bundy drove toward Highway 59, a frewway. They lost sight of the Civic. Then, while traveling on Highway 59, the Civic approached Harrison's car from the rear right side of the vehicle. One of the passengers of the Civic then fired multiple gunshots at Harrison's car. Bundy was shot and killed, and Hill, Miller, and Rattler were each shot and injured. The shooting occurred at approximately 4:00 a.m.; Bundy was driving between 65 and 80 miles per hour, and the night was foggy and dark.

Later that morning, at approximately 5:20 a.m., William Hagans saw three young Asian men standing on his neighbor's lawn beside a blue Honda Civic. He recognized one of the men as Jay Le, his neighbor's grandson and owner of the blue Honda Civic. He saw one of the men make a gesture of a gun with his fingers. After Hagans saw a TV news report about a shooting on Highway 59 involving a blue Honda, Hagans called the police. He reported seeing a blue Honda at Le's grandmother's house and later gave the police its license plate number. The police, after identifying the car as belonging to Le, questioned Le and Richard Hoang separately about the shooting. After a prolonged interrogation, Le and Hoang both told police that Ho called them and admitted to shooting several men on the freeway. Le also told the police that Ho

had been in possession of the car on the night of the shooting. He also told the them about a bullet hole in his car, sustained while Ho had possession of the vehicle. Le was interrogated several days before Hoang and told Hoang about his interrogation.

The police presented photo lineups to Harrison and the other witnesses. Harrison was able to tentatively identify Le and Ho from the photographs. Miller identified Le as the driver but could not identify the shooter. Miller also was shown a photograph of Le's car and he identified it as the Honda Civic involved in the shooting, but was not shown photographs of any other car. Rattler identified Le as the driver and Ho as the shooter.

The prosecutor, who prosecuted both Le and Ho, proceeded to trial on the theory that Le was the driver, Ho was the shooter, and Hoang was the third individual in the backseat of the Honda Civic. Le was tried first. At his trial, Le and Hoang recanted their statements and testified that Ho had not confessed to the freeway shooting and that they gave false statements to the police because the police threatened to prosecute them for the crime if they did not cooperate. Hoang testified that when he, Le, and Ho met outside Le's grandmother's house on the morning of December 7, 2001, Ho confessed to his involvement in a prior shooting at Café Eden on December 1, 2001, but that the men did not discuss any other shooting other than the Café Eden incident. Le testified that Ho was in possession of Le's car at the time of the shooting and during the first two weeks of December 2001. Le and Hoang also testified that the bullet hole in Le's car occurred during the Café Eden shooting, and Officer Hale, an investigating officer of the freeway shooting, testified that the bullet hole was sustained while the car door was open and therefore likely did not occur during the freeway shooting. Sergeant Wayne Wendel, however, testified that he believed that a bullet fired from within the car while the door was closed caused the hole. Le was convicted, and the prosecutor proceeded to trial against Ho.

No. 11-20238

At Ho's trial, Le and Hoang were called as witnesses for the state, and testified again that they were not involved in the freeway shooting and that Ho had never discussed the shooting with them. The prosecution elicited testimony about what Le and Hoang said to the police in their initial statements. Le and Hoang admitted to having implicated Ho to the police, but said that they lied to the police only after an extensive interrogation because they were afraid the police would arrest or imprison them. In closing arguments, the prosecution suggested that Le and Hoang recanted only because they were afraid of retribution from Ho. The prosecutor also elicited testimony from Hoang that Ho discussed a shooting when the three men met around 5:20 a.m. on December 7, 2001, and that Ho made a shooting gesture during this conversation. Although Hoang had testified at Le's trial that they had been discussing the Café Eden shooting, the judge in Ho's trial granted the defense a motion in limine to exclude evidence of the Café Eden shooting, which prevented Hoang from explaining that the discussion pertained to the Café Eden shooting. The prosecution also presented evidence about the bullet hole in Le's Honda Civic. Wendel testified that the bullet hole was caused by a bullet fired from within the car while the door was closed. Neither the prosecution nor the defense asked Hale about the bullet hole. The prosecution also elicited witness testimony from Hagan, Harrison, Rattler, Miller, and Hill. Harrison and Rattler both testified that Ho was the shooter and that he was the passenger in the blue Honda Civic that Le owned. Wendel also testified that both Harrison and Rattler identified Ho's photograph immediately in the photographic lineup. Hagan testified that he saw Le and two young Asian men outside of Le's grandmother's house, next to a blue Honda Civic, around 5:20 a.m. on the morning of Bundy's murder. He also testified that one of the men demonstrated a shooting gesture with his finger and hand.

No. 11-20238

The jury found Ho guilty of non-capital murder. During the sentencing phase of trial, the prosecutor elicited testimony from several witnesses about Ho's role in the Café Eden shooting, as well as his alleged role in the murder of Thao Lam, to demonstrate Ho's dangerousness. Le and Hoang both testified that Ho had confessed to them that he participated in the Café Eden shooting, and Le testified that Ho told him that a bullet struck his car during the incident. Officer Charlie Cash testified about Hoang's past involvement with gangs. Nam Do and Kristine Nguyen testified that Ho had gotten into a fight with Lam's boyfriend on the night of her murder. Wendel, who was assigned to investigate Lam's murder, testified that he suspected Ho of committing the murder. Paul Wayne Shrode, an assistant medical examiner, testified about the gunshot wound that killed Lam. Ho was sentenced by a jury to 50 years of imprisonment and assessed a fine of $10,000.

On direct appeal, Ho raised seven points of error, arguing, *inter alia*, that the trial court erred in admitting (1) Le's and Hoang's initial statements, wich they later recanted; (2) evidence of the bullet hole in Le's car; and (3) evidence that Ho discussed a shooting and made a gun gesture with his hand while outside Le's grandmother's house on the morning of December 7, 2001. The Fourteenth Court of Appeals of Texas affirmed Ho's conviction. Ho filed a motion for rehearing. On rehearing, the court issued a modified opinion that again affirmed his conviction. *See Ho v. State*, 171 S.W.3d 295 (Tex. App.–Houston [14th Dist.] 2005). On June 26, 2005, Ho filed a second motion for rehearing, in which he asserted for the first time that the prosecutor knowingly relied on false and misleading evidence in securing his conviction, thus depriving him of due process. The Fourteenth Court of Appeals of Texas denied Ho's second motion for rehearing. Ho then petitioned for discretionary review before the Texas Court of Criminal Appeals (TCCA), which the TCCA denied.

No. 11-20238

Ho filed a state habeas application that was denied by the trial court and the TCCA. Ho then filed a § 2254 habeas petition in federal court, which again raised his claim that the prosecutor knowingly relied on false and misleading evidence. A magistrate judge was assigned to the case and ultimately concluded that Ho was not procedurally barred from raising his due process claim, but that his claim was without merit. The district court adopted the magistrate judge's amended memorandum and recommendation and granted summary judgment in favor of the respondent. Ho appealed.[1]

## STANDARD OF REVIEW

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Register v. Thaler*, 681 F.3d 623, 626 (5th Cir. 2012) (quoting *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)). Because Ho's due process claim was dismissed by the state habeas court on procedural grounds and not adjudicated on the merits in state court, we do not apply the heightened standard of review provided for in 28 U.S.C. § 2254(d). *Graves v. Dretke*, 442 F.3d 334, 339 (5th Cir. 2006). "We review the adequacy of a state law used to preclude federal habeas review de novo." *Wright v. Quarterman*, 470 F.3d 581, 586 (5th Cir. 2006).

## DISCUSSION

### A. Procedural Default

Respondent argues that Ho procedurally defaulted his due process claim because he raised it for the first time in his second motion for rehearing before the Fourteenth Court of Appeals of Texas. We pretermit this issue because the

---

[1] Although the district court did not explicitly grant Ho a Certificate of Appealability ("COA"), it adopted the magistrate judge's amended memorandum and recommendation, which specifically recommended that a COA should be issued.

No. 11-20238

"claim can be resolved more easily" on the merits. *See Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004).

## B. Due Process

On appeal, Ho argues that the state violated his constitutional right to due process by knowingly presenting false or misleading evidence at trial in order to secure his conviction. He specifically contends that the state: (1) knowingly elicited false, recanted statements from Le and Hoang; (2) knowingly presented evidence of a bullet hole in Le's Honda Civic that the prosecutor knew to be associated with an unrelated incident; and (3) knowingly presented evidence of Le, Hoang, and Ho's discussion about a shooting that the prosecution knew to concern an unrelated incident.

"[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Giglio v. United States*, 405 U.S. 150, 153 (1972) ("[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" (citation omitted)). To establish that he suffered a due process violation based on the government's reliance on false or misleading testimony, Ho "must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution had knowledge that the witness's testimony was false." *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996). Ho must prove that the recanted statements, bullet hole evidence, and shooting conversation were all actually false and that the prosecution had knowledge of their falsity. The evidence that meets these standards must then be shown to have been material to the case.

### 1. False Statements

At trial, the prosecution called Le and Hoang to testify against Ho. They both testified that Ho did not call them on the morning of the freeway shooting

and did not confess. The prosecution questioned them about their initial statements to the police, and gave Le and Hoang copies of their statements in order to refresh their memories. They both admitted to having implicated Ho but again recanted their statements, as they had done at Le's trial, and testified that they had lied when they gave their statements because the police threatened to arrest and imprison them.

On appeal, Ho argues that the prosecution knowingly introduced false testimony when it elicited testimony about what Le and Hoang said during their police statements because the prosecution did not believe that Ho called Le and Hoang to confess the shootings. "A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected." *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). It is not sufficient for Ho merely to show that the state elicited testimony of past statements that have been recanted or contradicted by testimony produced at trial; "[s]uch contradictory trial testimony . . . merely establishes a credibility question for the jury." *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

In the present case, Ho showed that the prosecution did more than present inconsistent testimony. He showed that the prosecution knew and believed Le's and Hoang's police statements to be false because the prosecution secured a conviction against Le on the theory that Le and Hoang were in the car with Ho during the shooting. The prosecution therefore knew that Ho had not called Le and Hoang, that they did not learn about the shooting during the phone call, and that Ho had not called to confess because its theory was that Ho, Le, and Hoang were together during the shooting and therefore Ho had no reason to call them to confess. The prosecution presented statements that not only had been recanted, but which the prosecution knew to be false and would likely mislead the jury into believing that Ho confessed to shooting Bundy to his friends, who allegedly recanted only because they feared retaliation from Ho. The

8

No. 11-20238

prosecution's use of the recanted statements therefore qualifies as false or misleading for the purposes of Ho's due process challenge.

## 2. Shooting Discussion

Ho also argues on appeal that the prosecution presented false or misleading evidence when it put on evidence that Ho, Le, and Hoang engaged in a discussion about a shooting on the morning of Bundy's murder and that Ho demonstrated the shooting by making the figure of a gun with his hand. Ho argues that this evidence was misleading because the prosecution knew that the shooting discussion and gun demonstration were unrelated to Bundy's murder and that Ho was instead discussing a shooting that happened a week earlier at Café Eden.

Ho cannot challenge, on due process grounds, the prosecution's use of this information because "[d]efense counsel was aware that the testimony was misleading but consciously decided not to clarify it for the jury." *Beltran v. Cockrell*, 294 F.3d 730, 736 (5th Cir. 2002). As we have explained,

> When a criminal defendant, during his trial, has reason to believe that perjured testimony was employed by the prosecution, he must impeach the testimony at trial, and cannot have it both ways. He cannot withhold the evidence, gambling on an acquittal without it, and then later, after the gamble fails, present such withheld evidence in a subsequent proceeding.

*Id.* at 735 (quoting *Evans v. United States*, 408 F.2d 369, 370 (7th Cir. 1969)) (internal quotation marks omitted).

In the present case, the prosecution elicited evidence that Le, Hoang, and Ho discussed a shooting. Defense counsel deliberately withheld from the jury any evidence that it pertained to the Café Eden shooting and not to Bundy's murder; obtained a motion in limine to prevent the prosecution from eliciting testimony relating to the Café Eden shooting; and opted not to ask Hoang or Le any questions that would clarify what shooting the three men discussed on the

morning of Bundy's murder.  Because defense counsel knew about the alleged falsity at trial and failed to rebut it in furtherance of a deliberate defense strategy, he waived any error that resulted. *See id.*[2]

### 3. Bullet Hole Evidence

Finally, Ho argues on appeal that the prosecution knowingly presented false or misleading evidence when it elicited testimony from Wendel regarding a bullet hole in Le's car. It is undisputed that Le's car had suffered a bullet hole that broke the car window and caused damage to the frame and that Ho paid to replace the car window. At Le's trial, Hale testified that a bullet fired while the door was open caused the bullet hole, and that he had reason to believe that it was not related to the freeway shooting. Wendel testified that he disagreed with Hale's assessment and that he believed the bullet hole could have been caused by a bullet shot from inside the car while the door was closed. The prosecution called both Wendel and Hale to testify against Ho. Wendel again testified that Le told him about a bullet hole in the Honda Civic, and that he saw damage from a bullet hole in the frame of Le's car and obtained samples of broken glass found inside the vehicle. He further testified that the bullet hole was caused by a bullet being shot from inside the car. The prosecution did not ask Hale about the bullet hole.

Ho contends that the prosecution presented false evidence about the bullet hole because Wendel's testimony contradicted Hale's testimony at Le's trial. Inconsistency is not enough to prove knowing falsity. *See Koch*, 907 F.2d at 531. The same is true where the disagreement is between witnesses. *See Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistency between various witnesses

---

[2] In *Beltran*, the deliberate defense strategy—in which the defense opted not to introduce evidence pertaining to Beltran's alleged co-conspirator because counsel believed the co-conspirator resembled a serial killer—became grounds to grant relief on the basis of ineffective assistance of counsel. 294 F.3d at 734-36.

creates a credibility question for the jury). Ho did not present any evidence of falsity other than the fact that Wendel's testimony contradicted Hale's testimony at Le's trial. He therefore failed to prove that Wendel's testimony was false. Moreover, the defense knew that Hale had previously testified that the bullet hole could only have happened if the car door had been open, but chose not to question him about his bullet hole theory. Because the defense knew of the disagreement between Hale and Wendel and chose not to present it to the jury, it waived any error resulting from the allegedly false testimony. *See Beltran*, 294 F.3d at 736.

### 4. Materiality

In order to prove that the prosecutor committed a due process violation by relying on false or misleading evidence, Ho must show that the false or misleading evidence was material to the state's case. "False evidence is 'material' only 'if there is any reasonable likelihood that [it] could have affected the jury's verdict.'" *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997) (alteration in original) (quoting *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996)).

The recanted statements, in which Le and Hoang stated that Ho called them to confess to committing the Highway 59 murder, were false and the prosecution knew them to be false and that Ho had not called Le and Hoang to confess to the crime because the prosecution knew that Le and Hoang were both present at the shooting with Ho. However, Ho did not show that there was a reasonable likelihood that the recanted statements could have affected the jury's verdict. Two witnesses—Harrison and Rattler—provided eyewitness testimony that Ho was the shooter and that he had been the passenger in Le's blue Honda Civic. Wendel testified that both Harrison and Rattler identified Ho's photograph immediately in the photographic lineup. In addition, Hagan testified that he saw Le and two young Asian men outside of Le's grandmother's house, next to a blue Honda Civic, around 5:20 a.m. on the morning of Bundy's murder,

and that one of the men demonstrated a shooting gesture with his hand. Furthermore, the jury heard testimony from Hoang and Le that Ho discussed a shooting with them on the morning of Bundy's murder. The prosecution also presented evidence that Le's car sustained a bullet hole. Given this evidence, there is no reasonable likelihood that the recanted statements affected the judgment of the jury.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment in favor of respondent and dismissal of Ho's § 2254 habeas corpus petition.